IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NOEL K. BLEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03-0713-CV-W-ODS |
| | ) | |
| GEORGE W. HOLCOMB, III, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

On September 22, 2005, a jury returned a verdict finding (1) Defendant 90% at fault for the wrongful death of Plaintiff's child, D.B., and (2) Plaintiff's damages to be $1.1 million. Pending is Defendant's Motion to Alter or Amend Judgment, for Judgment as a Matter of Law, or for New Trial (Doc. # 80). The Court grants Defendant's request for judgment as a matter of law, obviating the need to rule on the remaining issues.

## I. BACKGROUND

D.B. was born in March 1994. She suffered from congenital defects in her bowel that required her to be delivered six weeks early by emergency caesarian section and to undergo immediate surgery upon her birth. Early on the morning of August 21, 2001, D.B. told Plaintiff she was experiencing a stomach ache and stiffness in her joints. After D.B. vomited in the bathroom, Plaintiff took her to the emergency room at Western Missouri Medical Center in Warrensburg, Missouri. Later that morning, D.B. was transported via ambulance to Children's Mercy Hospital in Kansas City, Missouri ("CMH").

Defendant was (and is) an attending physician and pediatric surgeon at CMH.[1] He eventually decided to admit D.B., who was still experiencing pain and complained of thirst and discomfort. Defendant left orders, *inter alia*, directing D.B. be observed and administered an I.V. for fluids. Shortly before 6:00 the next morning, Defendant learned D.B. had a fever throughout the night and her abdomen was more distended. Defendant determined D.B. required surgery, which was commenced at 7:15 a.m.. The operation had to be truncated due to D.B.'s low blood pressure, and a second operation was performed ten to twelve hours later. By this time, D.B.'s bowel was beyond saving and D.B. died.[2]

## II. DISCUSSION

### A. Standards

Defendant is entitled to judgment as a matter of law only if there is no legally sufficient evidentiary basis for a reasonable jury to find Defendant liable for malpractice. The Court is obligated to review the record in the light most favorable to the verdict. E.g., Genthe v. Lincoln, 383 F.3d 713, 716 (8th Cir. 2004). The substance of Plaintiff's claim is governed by state law, so the Court must follow the decisions of the Missouri Supreme Court. See, e.g., Cudworth v. Midcontinent Communications, 380 F.3d 375, 378 (8th Cir. 2004). Decisions of the state's intermediate courts are "persuasive authority" as to how the state's highest court will rule on unanswered questions and may also be relied upon unless there is a strong indication they misstate the law. E.g., United Fire & Casualty Ins. Co. v. Garvey, 328 U.S. 411, 413 (8th Cir. 2003).

---

[1] Defendant is a citizen of Kansas, Plaintiff is a citizen of Missouri, and the amount in controversy exceeded $75,000, so subject matter jurisdiction was present. CMH was not a party to this suit.

[2] The Court has omitted portions of D.B.'s treatment in the interest of brevity. Nothing that has been omitted is material to the legal issues resolved in this Order.

2

B.  Sufficiency of the Experts' Testimony

In cases of professional negligence, the plaintiff must offer expert testimony to establish the appropriate standard of care that should have been employed by the defendant.  E.g., Ostrander v. O'Banion, 152 S.W.3d 333, 338-39 (Mo. Ct. App. 2004); Brooks v. SSM Health Care, 73 S.W.3d 686, 692-93 (Mo. Ct. App. 2002); Boehm v. Pernoud, 24 S.W.3d 759, 761 (Mo. Ct. App. 2000); see also Haase v. Garfinkel, 418 S.W.2d 108, 113 (Mo. 1967).  "Expert medical testimony that the performance of another doctor was substandard, however, must be based upon a proper test of professional competence."  Swope v. Printz, 468 S.W.2d 34, 40 (Mo. 1971).  Swope has been interpreted to require

> the fact finder be informed of the standard being employed by plaintiff's experts in order for plaintiff to make a submissible case, unless the defendant's evidence amounts to a concession that the legal standard is the standard suggested by plaintiff.  It is not necessary that the legal standard be recited in ritualistic fashion, but generally it must appear somewhere in the context of the expert's testimony that the proper objective legal standard is the standard being employed by this expert in his or her testimony.  Questions should not be propounded, or answered, in terms of "inadequately explored legal criteria" 1 McCormick, Evidence § 12, at 50-51 (4th ed. 1992).  If attorneys and expert witnesses are allowed to become sloppy in the use of terms such as "accepted standards" and "standards of care" without specifying at some point in the witness' testimony the meaning of those terms, experts will inevitably tend to rely upon their own views of acceptable practice rather than applying the objective legal standard.

Ladish v. Gordon, 879 S.W.2d 623, 634-35 (Mo. Ct. App. 1994) (footnote omitted).  The objective is to insure not only that the expert utilizes the proper standard of care, but that the fact finder *knows* the expert utilizes the proper standard of care.  Consequently, merely instructing the jury or having another witness refer to the proper standard is insufficient; "[r]ather, it is necessary in each case that the fact-finder be informed as to whether the witness, in offering opinions, is using the standard prescribed by law and not some other standard."  Redel v. Capital Region Medical Center, 165 S.W.3d 168,

3

174 (Mo. Ct. App. 2005) (internal citations omitted); see also Ladish, 879 S.W.2d at 634. No particular language is required, so long as there is testimony from the expert indicating s/he based her or his testimony on the appropriate legal standard and not on the expert's personal (or some other) standard. Swope, 468 S.W.2d at 40; Redel, 165 S.W.3d at 174. Merely testifying that the defendant's actions fell below "the standard of care" or fell below "accepted medical standards" is insufficient because these statements do not convey the content of those standards by, for instance, opining the defendant's conduct fell below the "standards of learning, skill and proficiency commonly exercised by ordinarily careful, skillful and prudent" practitioners, Swope, 468 S.W.2d at 40, or that the defendant's conduct "fail[ed] to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession." Ladish, 879 S.W.2d at 634.

Ladish is instructive on this point. There, the plaintiff's expert testified the defendant's failure to advise the plaintiff regarding steps she should follow after laser surgery "was 'below the standard of care.'" 879 S.W.2d at 634. The expert did not give a description of, or otherwise expand or define, what he meant by "the standard of care." The Missouri Court of Appeals relied on Swope to hold the expert's use of "such phrases as 'the usual approach,' and 'it might have been more appropriate' tend to show a casualness and vagueness in his approach to evaluating [the defendant's] performance." Id. at 635. Fortuitously for the plaintiff, the defendant's evidence sufficiently established the existence of the very same duty – but if that had not been the case plaintiff's expert testimony would have been insufficient to make a submissible case.

Swope also presents an example of insufficient testimony. There, the plaintiff's expert was asked whether he had "an opinion as to whether or not the operation as performed by [the defendant] was up to acceptable medical standards as you know them?" In response, the expert opined that "the operation as performed by defendant 'was not up to acceptable medical standards.'" 468 S.W.2d at 40. The Missouri Supreme Court held the expert's "opinion, based upon his own undisclosed subjective

4

174 (Mo. Ct. App. 2005) (internal citations omitted); see also Ladish, 879 S.W.2d at 634. No particular language is required, so long as there is testimony from the expert indicating s/he based her or his testimony on the appropriate legal standard and not on the expert's personal (or some other) standard. Swope, 468 S.W.2d at 40; Redel, 165 S.W.3d at 174. Merely testifying that the defendant's actions fell below "the standard of care" or fell below "accepted medical standards" is insufficient because these statements do not convey the content of those standards by, for instance, opining the defendant's conduct fell below the "standards of learning, skill and proficiency commonly exercised by ordinarily careful, skillful and prudent" practitioners, Swope, 468 S.W.2d at 40, or that the defendant's conduct "fail[ed] to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession." Ladish, 879 S.W.2d at 634.

Ladish is instructive on this point. There, the plaintiff's expert testified the defendant's failure to advise the plaintiff regarding steps she should follow after laser surgery "was 'below the standard of care.'" 879 S.W.2d at 634. The expert did not give a description of, or otherwise expand or define, what he meant by "the standard of care." The Missouri Court of Appeals relied on Swope to hold the expert's use of "such phrases as 'the usual approach,' and 'it might have been more appropriate' tend to show a casualness and vagueness in his approach to evaluating [the defendant's] performance." Id. at 635. Fortuitously for the plaintiff, the defendant's evidence sufficiently established the existence of the very same duty – but if that had not been the case plaintiff's expert testimony would have been insufficient to make a submissible case.

Swope also presents an example of insufficient testimony. There, the plaintiff's expert was asked whether he had "an opinion as to whether or not the operation as performed by [the defendant] was up to acceptable medical standards as you know them?" In response, the expert opined that "the operation as performed by defendant 'was not up to acceptable medical standards.'" 468 S.W.2d at 40. The Missouri Supreme Court held the expert's "opinion, based upon his own undisclosed subjective

4

conception of acceptable medical standards and not upon the well-known and required Missouri standard, may not be counted upon by plaintiffs to sustain their judgment." Id.

In the case at bar, Plaintiff elicited testimony from two experts. The first, Dr. Mary Helikson, provided the following answers to the following questions:

Q: In your opinion is taking the history of a patient an extremely important role in treating that patient?

A: Yes.

Q: In your opinion what was the appropriate standard of care on August 21, 2001, when Dr. Holcomb had the patient, had [D.B.] in front of him with a history that was given by the parents, what was the appropriate standard of care in that situation?

[Proceedings held at the bench, during which Defendant's objections were overruled]

Q: Let me reask the question. Given [D.B.'s] presentation and the history that was given by the parents, what would have been the appropriate standard of care on August 21, 2001, for Dr. Holcomb to follow in that situation?

A: Well, I'm not sure he knew about the bloody emesis. I didn't hear about that. With the history of malrotation and the patient who is vomiting blood, I would be very concerned that they would have a recurrent volvulus. And I think diagnostic studies, further diagnostic studies would have been in order.

Tr. at 11-12.[3] On redirect, Dr. Helikson gave the following answer to the following question:

Q: Dr. Helikson, given [D.B.'s] presentation that evening and the history that Dr. Holcomb had when he evaluated her on the evening of August 21, 2001, what should Dr. Holcomb have done to meet the appropriate standard of care in that situation?

A: Continue to evaluate the patient or operate on the patient particularly with the blood and the vomit.

---

[3]Both parties have submitted excerpts from the trial transcript containing the experts' testimony. However, because plaintiff ordered and filed additional portions of the trial transcript, the pagination in the parties' excerpts are different. The reader is advised the Court is citing to the excerpt filed on November 1, 2005.

5

Tr. at 17. There was no other testimony from Dr. Helikson that could be characterized as addressing the standard of care.

Plaintiff's second expert, Dr. David Fleischer, testified as follows:

Q: Do you have an opinion as to whether or not Dr. Holcomb violated the appropriate standard of care when he admitted [D.B.] to the surgical ward for observation?

A: Yes, I do.

Q: What is that opinion?

A: Well, the opinion, my opinion is that when ever there is a question of small bowel obstruction there is always an attendant question of is there vascular compromise. If you twist the gut it's very possible you're going to twist the blood vessels that supply the gut and therefore allow – put the gut at risk of dying. If I, if this were my patient, am I allowed to say this? If this were my patient and were admitting this child for small bowel obstruction –

Q: Let me stop you. Rather than if it was your patient, let's talk about what a physician who was following the standard of care would do in a situation like this?

A: The standard of care is to admit the child for observation. Observing the child for the possibility of gut death and sepsis. And the standard of care in my belief is that if you're admitting a child who is this much at risk for such a rapid deterioration to a ward with 30 other patients, the standard of care would be A. to impress the residents with the importance of that possibility, require them to keep an eye on the patient and also to check in to see, let's say before somebody, before the doctor goes to bed to check in, talk to the nurse and find out how the child is doing. We're dealing with life and death risk here.

Tr. at 62-63. There was no other testimony from Dr. Fleischer relevant to this point.

Plaintiff's experts' testimony suffers from the same flaws identified in Swope and Ladish. Neither expert identified the content or source of the "standard of care" to which they referred, leaving the jury without confirmation they were referring to the standard required by law as opposed to a personal (or some other) standard of conduct. The necessity of distinguishing between the legal standard and the experts' personal standards is always necessary, but it is particularly important in this case. Dr. Helikson was the surgeon who operated on D.B. immediately after her birth, so she had more

6

complete information about D.B.'s history than did Defendant. Dr. Fleischer appeared willing to testify about what he would have done and his own personal standards; while Plaintiff's counsel then posed a slightly different question, it did not direct or confine Dr. Fleischer to the appropriate legal definition and therefore failed to provide evidence the jury could rely upon to determine whether Defendant violated the applicable standard of care.[4] The criticisms expressed in Ladish seem particularly appropriate here:

> The use of the terms "accepted medical standards" and "standards of care" do not in themselves satisfactorily articulate the appropriate legal standard. Care should be taken by counsel in every case, with every expert witness, to make sure the expert is properly oriented with regard to the meaning of the concept of negligence in the instance of a health care provider. It is not enough that the jury instruction . . . informs the jury of the meaning of negligence, or that some other witness testifies as to *that witness'* understanding of negligence in that context. It is necessary in each case that the fact finder be informed as to whether the witness, in offering opinions, is using the standard prescribed by law and not some other standard.

879 S.W.2d at 634 (emphasis in original).

Plaintiff relies on Pettet v. Bieterman, 718 S.W.2d 188 (Mo. Ct. App. 1986), but the case is not different from the other cases cited herein. In Pettet, the Missouri Court of Appeals reviewed the expert's testimony and concluded it was "based upon the 'standard,' 'accepted,' and 'prescribed' medical practice and not upon his own personal opinion. In addition, the testimony of defendant's expert put the objective standard of 'that degree of skill and learning ordinarily used under the same or similar circumstances' before the jury." 718 S.W.2d at 190. The state court's interpretation of the expert's testimony must be accepted, particularly given the unavailability of the trial transcript; based on that description of the expert's testimony, it is clear Swope was satisfied.

---

[4]Plaintiff contends there is no indication Dr. Helikson or Dr. Fleischer applied the wrong standard, but this misses the point. Plaintiff bears the burden of presenting sufficient evidence to sustain a verdict, and he fails to satisfy that burden if there is no testimony establishing his experts used the correct standard.

7

Plaintiff seizes upon the last sentence quoted from Pettett to argue Defendant's experts accurately identified the legal standard in their testimony, thereby remedying any defects in his own experts' testimony. Even if this is what Pettett means, the Court rejects this interpretation of Missouri law. It is not enough for the jury to simply be advised – in jury instructions or other witnesses' testimony – about the appropriate standard of care. The jury must know the plaintiff's expert actually applied the appropriate standard of care. Indeed, simply because the Court or Defendant's experts know and identify the appropriate standard of care for the jury is no guarantee Plaintiff's experts applied that standard and not one that is higher or different, cf. Swope, 468 S.W.2d at 41,[5] nor does it confirm for the jury that Plaintiff's expert did so.

### III. CONCLUSION

The Court harbors strong reservations about overturning a jury's verdict. These reservations are particularly strong in this case, where the Court suspects that a mere alteration in counsel's terminology would have satisfied the law but not altered the result. Such a course may have ensued if Defendant had clearly disclosed the full nature and import of his objections to the experts' testimony – but there is not a valid evidentiary objection for questions that are insufficient to satisfy the plaintiff's burden of proof so the Court cannot fault Defendant or deem the issue to have been waived. The Court is obligated to follow the law, and under Missouri law the jury was not presented with sufficient evidence to support its finding Defendant committed professional

---

[5]This is not a case in which Plaintiff can rely on Defendant's experts because, unlike the defendant's expert in Ladish, Defendant's experts did not identify the same obligations and duties as Plaintiff's experts. See 879 S.W.2d at 635.

8

negligence. Defendant's motion is granted, and judgment will be entered in Defendant's favor.

IT IS SO ORDERED.

                                            /s/ Ortrie D. Smith
                                            ORTRIE D. SMITH, JUDGE
DATE: January 5, 2006              UNITED STATES DISTRICT COURT

9